[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint, which complaint was dated March 12, 2002 and returnable April 2, 2002 and in which complaint the plaintiff husband sought a dissolution of the marriage, a fair and equitable division of the property and such other relief as the court in justice and in equity believes appropriate. Accompanying the complaint were the usual automatic orders.
On March 12th a motion for a restraining order was filed on behalf of the plaintiff petitioner and the file reflects that there was a certain agreement of the parties dated June 17, 2002 accepted by the court, Devine, J., incident to the foregoing.
The defendant filed an appearance by counsel on April 2, 2002 and on May 1, 2002 filed an answer to the complaint and on the same date a counterclaim, which counterclaim consisted of three counts, and in the prayer for relief, the defendant requested a dissolution of the marriage, alimony, an equitable division of the marital property and an equitable assignment of the marital debt.
On May 2, 2002 a motion for contempt was filed by the defendant, but the file appears to reflect that the same was not acted upon.
On May 10, 2002 the plaintiff filed an answer to the cross complaint of the defendant.
There were several motions filed in the matter as concerns issues of discovery and production.
On December 18, 2002 the plaintiff and the defendant with their respective counsel appeared before the court and the matter was heard to a conclusion. Certain witnesses who had been subpoenaed appeared and CT Page 15334-io their testimony was taken in the proceeding.
The court makes the following findings of fact.
The plaintiff and the defendant were united in marriage in Norwich on October 28, 1978. The defendant's maiden name was Guertin. Both of the parties have resided for more than one year in this state prior to the initiation of the instant complaint.
On the basis of the testimony elicited at trial, the court finds that the marriage has irretrievably broken down with no reasonable prospect for reconciliation.
The plaintiff and the defendant have no minor children issue of this marital union. No other minor children have been born to the defendant wife since the date of the marriage of the parties.
Neither party is the present recipient of welfare or assistance from the State of Connecticut or any town, city, municipality or subdivision thereof.
Although there are no minor children of this marital union, the marriage was blessed with three children all of whom are now over age 18 and notwithstanding the foregoing as concerns welfare or assistance, it appears that in 1980 through 1981 there was some welfare assistance provided to the parties to this proceeding; however, any benefits received were paid and discharged in full according to the testimony.
The plaintiff was born on April 27, 1958; is now age 44. He describes his health as good. He is not presently on any medication regimen; however, in the past he has taken medication for a problem of acid reflux.
During the marriage, approximately two years ago, the plaintiff underwent a hernia operation which apparently was successful. The plaintiffs education extended through completing the eighth grade. In 1990 he received and secured a general equivalency diploma. In addition, he has some technical school training in water and wastewater management. At one point in time, the plaintiff worked for the town of Ledyard. After leaving that position, he has been involved in doing home improvement work. The plaintiff does not presently have any employees except for himself incident to that business and he performs the majority of the work which falls within the confines of his business. Incident to the plaintiffs former employment by the town of Ledyard, he did retain certain benefits. CT Page 15334-ip
The plaintiff testified that he removed himself from the home of the parties in July of 2002. The plaintiff Felt that in February of 2002 that the marriage had irretrievably broken down.
The parties apparently did engage in some marital counseling during July 2000 through 2001. Also, some additional counseling was apparently undertaken in the period June of 1999 through December 2001.
In June of 1999 the plaintiff was hospitalized for a time incident to depression. The plaintiff indicated that in 1999 at one point in time he contemplated doing away with himself. At one point, the defendant caused the plaintiff to be committed to the Backus Psychiatric ward for a very short duration amounting to some hours.
It was the plaintiffs testimony that the marriage was a mistake from the beginning. The plaintiff indicated that his requirements as to understanding, affection and attention were such that he felt deprived as concerns the conduct of the defendant. There were, during the marriage, four or five separations; the first occurring when one of their then minor children was two years old; the second when a child named Fayth was an infant and the third separation was at the time of the birth of the now adult daughter Shawna.
The plaintiff acknowledged relationships with other ladies including one in 1995.
The plaintiff claimed that the defendant was likewise involved with relationships outside the marriage.
Incident to his testimony, the plaintiff acknowledged a relationship with a certain lady but represented that the individual was merely a babysitter for one of the parties' children at the time when they were young.
The plaintiff acknowledged a friendship with one Vanessa Reynolds whom he met in December of 2001. This was incident to certain proposed work that the plaintiff was going to do at the Reynolds' premises. The plaintiff acknowledged a relationship with Reynolds.
The plaintiffs position was to the effect that there were only two friendships outside the marital union during its length.
The business, which the plaintiff conducts, was started in 1980 and continued through 1990. For the period 1990 through 2001 the plaintiff CT Page 15334-iq worked for the town of Ledyard and did some side jobs on his own. The plaintiffs compensation while at Ledyard was in the neighborhood of approximately $38,000.00 a year and on a couple of occasions as much as $50,000.00 annually.
The plaintiffs testimony was to the effect that the defendant, in his words, never met his needs.
The plaintiff apparently was in counseling of one sort or another for a period of as long as 31 months.
Even though the plaintiff had friendships outside the marriage, the testimony indicated that intimacy continued between the plaintiff and defendant.
As earlier noted, there were three children issue of this marital union who are now all adults; to wit, Eric, age 24; Fayth, age 22, and Shawna, age 21.
The plaintiffs present residence is at 582 Colchester Avenue which is a home owned by his parent father. This is a home apparently which the plaintiffs father purchased in July of 2002.
The witness Vanessa Reynolds testified that she has known the plaintiff since December of 2001, acknowledged a relationship with the plaintiff.
The witness was apparently aware of the plaintiffs marital status.
The witness Shawna Reguin, daughter of the parties, appeared and testified that she was aware of the relationship between the plaintiff and Reynolds.
This is a marriage of 24 years. According to the testimony of the defendant, the plaintiff has strayed on eight prior occasions including one shortly after the marital joining of the parties.
The defendant's testimony indicated that the plaintiffs behavior left something to be desired particularly with regard to his verbal comments of a vulgar nature to her.
The defendant verified that there had been four occasions during the life of the marriage when she had been obliged to leave the home and the defendant candidly acknowledged that she had had two friendships during the marriage. CT Page 15334-ir
The defendant, notwithstanding the foregoing, at one point told the plaintiff that she would return to the home and try to preserve the marriage if the plaintiff would remain in therapy for a period of one year. That apparently did not occur.
The defendant testified with regard to the receipt of phone calls from the witness Reynolds to the plaintiff and that the plaintiffs conduct on occasion consisted of being absent from the home for entire evenings. The defendant observed the plaintiff and the witness Reynolds together at the home of Reynolds.
The defendant acknowledged that since the initiation of the instant petition that she has socialized and presently has a friend.
The defendant's education extended through completing high school. She has a certificate as a phlebotomist and is employed at the Lawrence and Memorial Hospital. The defendant indicated that her hourly rate of compensation was $14.38 an hour and that her income may be as high as $596.00 a week as a gross, but that her base income is in the realm of $576.00 a week.
The defendant professed that she still has love and affection for the plaintiff but can no longer, in her words, trust him.
From the financial affidavits submitted by the parties, the court finds as to the plaintiff, he is the owner of C. M. Reguin Building and Remodeling Company; gross weekly wage reflected on his affidavit is $872.00 a week; deductions for federal taxes, FICA, state tax, total $329.00 for a net of $543.00. Weekly expenses including those shown on Schedule A amount to $704.00. Debts as reflected on Schedule B of his financial affidavit total $17,615.00.
The premises or timeshare as concerns Standish Road in West Yarmouth, Massachusetts is valued at $7,000.00 with a mortgage of $1,300.00 for a net equity of $5,700.00. 472 Boswell Avenue, Norwich is valued at $145,900.00 with a mortgage of $93,000.00 for a total equity of $52,900.00.
The plaintiff shows a 2002 Dodge motor vehicle valued at $16,000.00 with a loan balance of $20,400.00 for a minus equity of $3,600.00; $896.00 in the bank; some securities including Conseco valued at $14,200.00; miscellaneous tools and equipment valued at $2,500.00 for a total cash value of all assets of $79,796.00.
From the financial affidavit of the defendant, the court finds that she CT Page 15334-is is employed as a phlebotomist at Lawrence and Memorial Hospital; gross weekly wage, $536.40; deductions, taxes, etc., $128.08 for a net of $408.32. The defendant shows on her financial affidavit also a 401K where she apparently contributes $33.15 weekly and in addition, $7.25 for union dues, so that her adjusted net is $367.92. Weekly expenses reflected on her affidavit, $264.39. Debt totaling $5,831.00.
The defendant values 472 Boswell Avenue at $130,000.00 with a mortgage of $74,016.00 for her share of the equity being $27,992.00. The timeshare at Standish Way in Massachusetts the defendant values at $7,000.00; mortgage, $1,300.00; her share of the equity, $2,850.00.
The defendant's affidavit reflects a second mortgage on the premises at 472 Boswell Avenue to one Attorney Rothstein; no figures incident thereto are reflected; a 2002 Jeep valued at $23,000.00; loan balance, $23,000.00; 0 equity. Certain personal property valued at $800.00; $50.00 in a credit union; a 401K Invesco Reimbursement, Inc. entity valued at $7,000.00 for a total cash value of all assets of the defendant of $38,692.00.
The one exhibit presented to the court is an e-mail message apparently from a friend of the defendant to the defendant. The friend's name is Carl. No other exhibits.
From the dissolution of marriage report form, the court notes that this is the first marriage for both parties; that their education according to that form indicates that their education extended through completing high school.
Discussion
This is a marriage of 24 years. There were three children issue of the marital union who are now all mature adults.
The plaintiff is age 44 and described his health as good basically. The defendant is age 43 and her health is also good. There is no evidence of any substantial medical problems afflicting the parties.
The plaintiff has substantial debt amounting to $17,615.00.
The assets of the parties have been touched upon in earlier portions of the memorandum as well as the conduct of the parties during the marriage.
The educational attainments of the parties consists of completing high CT Page 15334-it school basically and some further modest training.
Notwithstanding some aspects of the relationship, it is to the defendant's credit that she is willing or has been willing to try and preserve the marital union and has done what she can in that respect until such time as she apparently came to the resolve that it was a lost cause. There was no evidence presented to the court indicating problems with the immoderate use of alcohol or drugs nor any overt physical violence.
The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statute § 46b-82 regarding alimony. The court has considered all of the applicable case law that governs the matter. The court has considered the testimony of the parties, their candor or lack thereof as observed over the conduct of the trial and arguments of counsel. The court has considered the financial affidavits and the limited exhibit. The court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability or prospects thereof of each of the parties and the estate and needs of the parties. The court has considered the standards of living of the parties. The court has considered the present financial positions of the parties and their prospects, if any, for future income and opportunities. The court has considered the issue of fault.
The court enters the following orders.
The plaintiff shall pay to the defendant the sum of $110.00 per week as periodic alimony for a period often years. Said amount and duration shall be non-modifiable except that it shall terminate sooner upon the death of either party, the defendant's remarriage or the defendant's cohabitation as defined by statute.
The plaintiff and the defendant shall retain their individual pension retirement plans, investment accounts free and clear of any claim or interest one From the other.
The plaintiff and the defendant shall waive any and all claims for interest in and to the other's bank accounts.
The plaintiff may retain and the defendant shall waive any and all claim to the plaintiffs business known as C.M. Reguin Building and Remodeling including but not limited to plaintiff's tools and CT Page 15334-iu equipments.
The plaintiff and defendant shall each pay, assume and save the other harmless from the liabilities itemized on their respective financial affidavits.
Each party shall be solely responsible for and hold the other harmless from their respective attorney's fees and costs associated with this petition.
The defendant shall cooperate with the plaintiff to maintain his medical insurance through the defendant's employer or its equivalent for the three year COBRA period as permitted by federal and state law but at the plaintiffs cost and expense.
The plaintiff shall retain possession and ownership of his 2002 Dodge Ram sport pick up truck and be responsible for and assume any related indebtedness and hold the defendant harmless therefrom.
The defendant may retain possession and ownership of her 2002 Jeep Liberty and assume and be responsible for any related indebtedness and indemnify and hold the plaintiff harmless from the same.
The defendant shall retain all the household belongings except the desk from the plaintiffs grandfather, the plaintiffs personal and business belongings and the license plates on the defendant's Jeep Liberty which the plaintiff shall be entitled to retrieve within the next 30 days.
The marital residence located at 472 Boswell Avenue, Norwich, Connecticut and the jointly owned timeshare on Standish Road, West Yarmouth, Massachusetts shall immediately be placed on the market for sale with an agent agreed to by the parties with terms and conditions mutually agreed upon. Both parties shall cooperate with the sale of the real estate and use efforts reasonably calculated to produce the best sales price and quickest sale then available in the market.
In the event that conditions require, the listing price will be reduced accordingly. The court shall retain exclusive jurisdiction over the parties and this real property if there is a dispute as to the agent, listing price, the final minimum sales price and/or terms and conditions of sale in order to enforce the intent of this provision and either party may petition the court for an order as to these issues. Upon the sale of the real property and at the closing, the normal and customary costs shall be paid out of the gross sales proceeds including but not limited to mortgage balances, real estate commissions, taxes, attorney's fees, CT Page 15334-iv conveyance taxes, recording fees and like expenses. Thereafter, the net proceeds shall be shared equally, 50% to the plaintiff and 50% to the defendant.
The court grants the relief prayed for and dissolves the marital union on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
 ___________________ Austin, J.
CT Page 15334-iw